[No. 52748-2.   En Banc.   December 31, 1986.]

LINCOLN LANE ADDLEMAN, JR., ET AL, *Appellants,* v.
THE BOARD OF PRISON TERMS AND PAROLES,
ET AL, *Respondents.*

504

*Lincoln Lane Addleman, Jr.,* pro se, and *John G. Ziegler, James E. Lobsenz* (of *Wolfe, Lobsenz & Cullen*), and *John B. Midgley,* for appellants.

*Kenneth O. Eikenberry, Attorney General, Kathleen D. Spong, Senior Assistant,* and *Paul A. Silver* and *Aaron K. Owada, Assistants,* for respondents.

*Norm Maleng, Prosecuting Attorney for King County, Deborah J. Phillips, Senior Appellate Attorney,* and *Robert S. Lasnik, Chief of Staff,* and *Michael Redman* on behalf of Washington Association of Prosecuting Attorneys, amici curiae for respondents.

GOODLOE, J.—We accepted certified review of consolidated habeas corpus petitions alleging the original RCW 9.95.009 has (1) an ex post facto infirmity due to its abolition of the Board of Prison Terms and Paroles in 1988 and (2) statutory construction problems and equal protection problems resulting from interpretations in two Court of Appeals opinions. Recently enacted legislation corrects the ex post facto concern and clarifies the statute's intent remedying the equal protection concerns.

On August 2, 1984, appellant Lincoln Lane Addleman filed a Complaint for Declaratory Judgment in Walla Walla County Superior Court. Subsequently, numerous other Washington State Penitentiary inmates filed nearly identical complaints prepared by Addleman. All complaints appear to have been treated as habeas corpus petitions.

Substantively, appellants seek application of the standard sentence ranges in the Sentencing Reform Act of 1981 (SRA) to their crimes which were committed prior to the SRA's effective date of June 30, 1984. Appellants also allege ex post facto infirmities by the abolition of the Board of Prison Terms and Paroles in 1988.

Factually, the complaints alleged each inmate (1) had been convicted of one or more felonies before July 1984; (2) had received before July 1984 a minimum term from the Board greater than predicted would be imposed under the

SRA; and (3) was entitled to have the Board reset the term of confinement pursuant to the SRA which the Board refused to do.

The Board filed a response to Addleman's complaint. On January 25, 1985 the Walla Walla County Superior Court denied the consolidated petitions relying on *In re Blair,* 38 Wn. App. 670, 688 P.2d 532 (1984) and *In re Townsend,* 38 Wn. App. 727, 688 P.2d 547 (1984).

Appeal was taken to the Court of Appeals, Division Three, which certified the case to this court pursuant to RCW 2.06.030. By commissioner ruling, certification was accepted on May 28, 1986.

Appellants make a 3–pronged challenge to RCW 9.95.009. RCW 9.95.009 is section 24 of the SRA and addresses the continued existence and duties of the Board under the SRA. One challenge is directed at RCW 9.95.009(1), and alleges an ex post facto infirmity by the abolition of the Board in 1988. Two challenges are directed at RCW 9.95-.009(2): a statutory construction argument and an equal protection argument. In the 1986 session, the Legislature passed and the Governor signed (with one minor veto not relevant here) Substitute House Bill 1400 (Laws of 1986, ch. 224, p. 726) which substantially amends RCW 9.95.009. The analysis of each issue will begin with an explanation of the pertinent subsection of RCW 9.95.009 as originally enacted, followed by a discussion of the appellants' challenge, and conclude by addressing the effect of the new legislation on the challenge.

The first issue is whether RCW 9.95.009(1) violates ex post facto prohibitions by its abolition of the Board in July 1988. RCW 9.95.009(1) provides in pertinent part:

(1) On July 1, 1988, the board of prison terms and paroles shall cease to exist. Prior to that time, the board's membership shall be reduced . . .

Appellants argue correctly that abolition of the Board in 1988 would violate ex post facto prohibitions because of the Board's duties toward those sentenced before 1984 who will still be incarcerated after July 1988. Under the 1935 parole

board act, the Board is authorized among other things to waive certain mandatory minimum terms by a two–thirds vote, RCW 9.95.040, to recompute minimum terms at any time, RCW 9.95.052, and to grant "good time" credits, RCW 9.95.070 and .110. Removing the body that implements these mechanisms which shorten time in prison violates constitutional prohibitions of ex post facto laws.

For a law to be ex post facto, two critical elements must be presented: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." (Footnotes omitted.) *Weaver v. Graham,* 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). In *Weaver,* eligibility for good time credits of 5, 10 and 15 days depending on length of stay were statutorily reduced to 3, 6, or 9 days and applied to persons convicted before the amendment. The Court found ex post facto prohibitions violated because the good time credit was a determinant of the prison sentence which was altered by the amendment to the prisoner's disadvantage. Because "the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment", it "runs afoul of the prohibition against *ex post facto* laws." *Weaver,* at 35–36.

The same can be said here. In essence, without the Board to perform its above enumerated functions, the punishment is changed, and a greater punishment than annexed to the crime when committed is inflicted. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648 (1798).

New legislation, however, solves the ex post facto problem. Section 6 of chapter 224 of the Laws of 1986 amends RCW 9.95.009(1) to read "On July 1, 1986, the board of prison terms and paroles shall be redesignated as the indeterminate sentencing review board." This legislation also adds a new section, which states:

> The legislature finds that a process for review of duration of confinement and release decisions for persons convicted of crimes committed before July 1, 1984, must

be available after the board of prison terms and paroles ceases to exist. A transitional agency, the indeterminate sentence review board, is created to review such decisions until 1992 when all of the functions, powers, and duties previously performed by the indeterminate sentence review board will be transferred to the superior courts of the state of Washington.

Laws of 1986, ch. 224, § 1, p. 726. The amended and additional sections insure that a body will exist to review as necessary the prison terms and paroles of persons incarcerated prior to July 1, 1984. The Legislature in the SRA did not repeal the parole system but only made it inapplicable to those committing felonies after 1984. RCW 9.95.900. The Legislature had until 1988 to establish a mechanism whereby the still applicable functions of the Board for pre–July 1, 1984 prisoners could be performed. Appellants in their supplemental brief concede that their ex post facto argument was not ripe and is cured by the statutory amendments.

The second issue is whether RCW 9.95.009(2) as a matter of statutory construction or constitutional right mandates that SRA sentence ranges be applied to persons convicted and sentenced prior to July 1, 1984. RCW 9.95.009(2), as originally enacted, provided in pertinent part:

> (2) Prior to its expiration and after July 1, 1984, the board shall continue its functions with respect to persons incarcerated for crimes committed prior to July 1, 1984. The board shall consider the standard ranges and standards adopted pursuant to RCW 9.94A.040, and shall attempt to make decisions reasonably consistent with those ranges and standards.

Two Court of Appeals opinions and one Supreme Court opinion have addressed this section. *In re Blair,* 38 Wn. App. 670, 688 P.2d 532 (1984); *In re Townsend,* 38 Wn. App. 727, 688 P.2d 547 (1984); *In re Myers,* 105 Wn.2d 257, 714 P.2d 303 (1986). In *Blair,* the petitioner sought immediate release from imprisonment because if his pre–July 1, 1984 crime had been scored under the SRA he would have served his determinate sentence. The Court of Appeals cor-

rectly held that the SRA directly applies only to those who commit crimes on or after July 1, 1984. *Blair*, at 673–74. To the extent that the *Blair* court, however, implied that prison sentences of those who committed crimes before July 1, 1984, did not need to be conformed to SRA standard ranges, *Blair*, at 674, it erred. RCW 9.95.009(2) explicitly mandates that the Board make decisions reasonably consistent with the SRA. *Blair* incorrectly ignored the language of RCW 9.95.009(2) and rendered the section meaningless. Also, the petitioner in *Blair* misinterpreted the effect of SRA sentence conformance. Conformance of pre–July 1 1984 sentences to SRA standards pursuant to RCW 9.95.009(2) does not necessarily result in an inmate's release upon completion of that time; the inmate must also be determined to be parolable.

In *Townsend*, petitioner sought readjustment of his prison sentence under RCW 9.95.009(2). The Court of Appeals correctly determined that the SRA "unambiguously applies to individuals convicted before July 1, 1984," but incorrectly limited the group to those "who did not have their minimum sentences determined by the parole board until after July 1, 1984." *Townsend*, at 728. The appellate court thus limited the meaning of the word "decisions" as used in RCW 9.95.009(2) to mean only the original setting of minimum terms, and not later decisions on duration of confinement. Under *Townsend*, the Board is obliged only to make initial minimum term decisions after June 30, 1984, reasonably consistent with the SRA. This could be interpreted to mean that minimum term decisions made prior to July 1, 1984, and all other decisions on duration of confinement need not be made reasonably consistent with the SRA. This interpretation is incorrect. It is contrary to the language of the section and to rules of statutory construction. Because of our determination, we do not need to address whether an equal protection violation was presented.

As we recognized in *Myers,* at page 268, RCW 9.95.009(2) mandates the Board to continue its functions and to make

decisions reasonably consistent with the ranges and standards adopted pursuant to RCW 9.94A.040. Our decision in *Myers* was limited to those similarly situated to the *Myers* petitioner, that being those who had their minimum term hearing *after* July 1, 1984. *Myers,* at 262. The court did not address the question presented here—that of SRA application to those who received minimum terms *before* July 1, 1984.

In an unambiguous statute, a word is given its plain and obvious meaning. *State v. Theilken,* 102 Wn.2d 271, 275, 684 P.2d 709 (1984). Appellants point out that the Board makes many decisions exercising its duties. Besides setting minimum terms the Board's duties include: reviewing a prisoner's progress and changing the minimum term (RCW 9.95.052); waiving certain mandatory minimum terms (RCW 9.95.040); granting or denying good time credits (RCW 9.95.070); granting and defining terms of parole (RCW 9.95.100, .110); and resolving disciplinary matters (RCW 9.95.080).

Even if the statute is not a model of clarity, other rules of statutory construction mandate application of SRA standards to those sentenced prior to July 1, 1984. In general, when construing a statute the court's purpose is to ascertain and give effect to the intent of the Legislature. *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 110, 676 P.2d 466 (1984); *State v. Keller,* 98 Wn.2d 725, 728, 657 P.2d 1384 (1983). Each provision must be viewed in relation to other provisions and harmonized if at all possible to insure proper construction of every provision. *Burlington Northern, Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977). Statutes should not be interpreted so as to render any portion meaningless, superfluous or questionable. *Avlonitis v. Seattle Dist. Court,* 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982).

The *Townsend* interpretation incorrectly limited the language "decisions" to decisions only on minimum terms. A court may not read into a statute those things which it conceives the Legislature may have left out unintentionally.

*Rhoad v. McLean Trucking Co.,* 102 Wn.2d 422, 427, 686 P.2d 483 (1984). "Wherever possible, it is the duty of this court to construe a statute so as to uphold its constitutionality." *State v. Browet, Inc.,* 103 Wn.2d 215, 219, 691 P.2d 571 (1984); *see also In re Cross,* 99 Wn.2d 373, 382–83, 662 P.2d 828 (1983). The construction of decisions to mean only the original setting of minimum terms should be avoided.

Appellants make a compelling argument that pursuant to rules of statutory construction, this is a remedial statute intended to give a specific and limited retroactive effect to the SRA. "A statute is remedial and has a retroactive application when it relates to practice, procedure or remedies, and does not affect a substantive or vested right." (Italics omitted.) *Tellier v. Edwards,* 56 Wn.2d 652, 653, 354 P.2d 925 (1960). A remedial statute is presumed to apply retroactively. *Haddenham v. State,* 87 Wn.2d 145, 148, 550 P.2d 9 (1976); *Pape v. Department of Labor & Indus.,* 43 Wn.2d 736, 741, 264 P.2d 241 (1953). This is especially true when the remedial statute favorably reduces punishment laws applied to previously convicted criminal defendants.

> An additional reason for holding the legislation to operate retroactively is that it, in effect, reduced the penalty for a crime. When this is so, the legislature is presumed to have determined that the new penalty is adequate and that no purpose would be served by imposing the older, harsher one. This rule has even been applied in the face of a statutory presumption against retroactivity . . .

*State v. Heath,* 85 Wn.2d 196, 198, 532 P.2d 621 (1975).

The new legislation clarifies the original language of RCW 9.95.009(2) and supports appellants' reading of it. Section 6 of chapter 224 of the Laws of 1986 amends RCW 9.95.009(2) to read:

> (2) After July 1, 1984, the board shall continue its functions with respect to persons convicted of crimes committed prior to July 1, 1984, and committed to the department of corrections. When making decisions on duration of confinement, and parole release under RCW

9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: *Provided,* That the board and its successors shall give adequate written reasons whenever a minimum term or parole release decisions [*sic*] is made which is outside the sentencing ranges adopted pursuant to 9.94A.040 RCW. In making such decisions, the board and its successors shall consider the different charging and disposition practices under the indeterminate sentencing system.

The decisions language has been clarified to mean decisions on duration of confinement and parole release. The Board is required to consider the purposes, standards and ranges of the SRA and make decisions reasonably consistent with them. The mandate for reasonably consistent decisions does not superimpose exactly the SRA upon the prior system. The prison and parole system is still applicable to those sentenced before July 1, 1984. The Board is making the same types of decisions but it is now required to consider different factors.

■ The Board for adequate written reasons can decide not to conform a sentence to the SRA. Such decision should be the exception, however, not the rule. *See In re Myers,* 105 Wn.2d 257, 262, 714 P.2d 303 (1986). Examples of reasons for decisions not conforming to the SRA at the minimum term setting would be aggravating and mitigating circumstances delineated in RCW 9.94A.390 or statutory preclusion. *See In re Hunter,* 106 Wn.2d 493, 723 P.2d 431 (1986); *In re Mayner,* 107 Wn.2d 512, 730 P.2d 1321 (1986). Examples of reasons for decisions not conforming to the SRA at parole hearings would be insufficient rehabilitation and improper parole plans. RCW 9.95.100, .110. *See also* Laws of 1986, ch. 224, § 6, p. 728.

In light of these considerations, we hold that generally Board decisions on duration of confinement must be made

in accordance with the requirements of RCW 9.95.009(2). We remand for proceedings consistent with this decision.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., concur.

Reconsideration denied April 21, 1987.