988 F.2d 119
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Moore HARRIS, Petitioner-Appellant,
v.
James BLODGETT; Washington State, Respondents-Appellee.
 No. 92-35159.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 4, 1993.*
Decided Feb. 17, 1993.
 
 Appeal from the United States District Court for the Eastern District of Washington; No. CV-91-71-JLQ, Justin L. Quackenbush, District Judge, Presiding.
 E.D.Wash.
 AFFIRMED.
 Before TANG, KOZINSKI, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Harris, a Washington state prisoner, appeals the denial of his habeas corpus petition. Harris claims that his due process rights were violated when the state Indeterminate Sentence Review Board (the "Board") revoked his parole for possession of a firearm even though a federal jury acquitted him of the same offense. We affirm.
 
 
 3
 In 1975 Harris pleaded guilty to various state offenses. In January 1976 he was sentenced to two concurrent twenty year terms to be followed by two ten year concurrent terms. On December 14, 1987 the Board released Harris on parole subject to various conditions, including that he not possess a firearm.
 
 
 4
 On December 3, 1988, Harris was arrested at the Coach House lounge in Spokane for possession of a firearm, and federal charges were filed against him. His parole was then suspended and on December 15 a notice of parole violation was issued. On December 21, the Board met to consider the parole violation and, on its own motion, continued the hearing pending the outcome of the federal trial. On February 28, 1989, Harris challenged the continuance, and the Board held an earlier hearing at his request on March 22--prior to the federal trial.
 
 
 5
 At the March 22 hearing, board member George Johnson heard testimony of the two arresting officers and the manager of the Coach House, along with Harris's supervising parole officer. Harris presented no evidence on his own behalf. Johnson orally concluded that Harris possessed the gun as charged. The final disposition was postponed pending the federal trial, after Harris waived the Board's requirement of a written decision within ten days. On April 22, 1989, Harris was acquitted of the federal possession charge. His attorney telephoned the Board and informed it of the acquittal. Nevertheless, on April 27 the Board found that Harris violated his parole by possessing a firearm and revoked his parole.
 
 A. Procedural Due Process Claim
 
 6
 Harris claims that the Board denied him procedural due process when it revoked his parole without reconsidering its findings in light of the evidence adduced in the federal trial. Due process in the parole revocation context requires "a preliminary hearing before an independent hearing officer ... to determine whether probable cause exists to believe that the parolee has violated the conditions of his parole. Once probable cause is found, a formal hearing is required to evaluate the alleged violations and to decide whether the evidence warrants revocation." Heinz v. McNutt, 582 F.2d 1190, 1193 (9th Cir.1978).
 
 
 7
 At the revocation hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Morrissey v. Brewer, 408 U.S. 471, 488, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972); see Heinz, 582 F.2d at 1193. The Supreme Court has also set out six procedures minimally mandated by due process, including the "opportunity to be heard in person and to present witnesses and documentary evidence." Morrissey, 408 U.S. at 489, 92 S.Ct. at 2604.
 
 
 8
 Harris was accorded all of these rights. The Board received all evidence proffered to it, including the fact that Harris had been acquitted in the federal court. Harris fails to show a denial of procedural due process.
 
 B. Substantive Due Process Claim
 
 9
 Harris also raises a claim of denial of his right to substantive due process based on the Board's failure to consider the trial testimony in deciding to revoke his parole. Harris argues that his parole revocation was "so totally devoid of evidentiary support as to be invalid under the Due Process Clause of the Fourteenth Amendment." Douglas v. Buder, 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973) (per curiam). The finding that Harris violated his parole must have been supported by a preponderance of the evidence. Wash.Rev.Code § 9.95.125; Pierce v. State, 646 P.2d 1382, 1385 (Wash.1982).
 
 
 10
 Based on the evidence before the Board at the March 22 hearing--even taking notice of the fact of Harris's subsequent acquittal--there was substantial support for the Board's revocation. At most the federal trial testimony casts some doubt on the testimony adduced at the revocation hearing. However, the Board did consider the evidence placed before it. Harris has failed to show that the revocation so lacked evidentiary support as to amount to a denial of due process.
 
 
 11
 C. Due Process in Connection with Resentencing
 
 
 12
 Harris asserts two due process violations arising out of his resentencing following the parole revocation. First, he asserts that the Board abused its discretion by failing to consider the exculpatory trial evidence in determining his sentence. Second, he claims that his five year sentence was an excessive minimum term in violation of Washington law. The first argument fails because, as we have already stated, Harris failed to present exculpatory evidence to the Board in connection with the parole revocation procedure. Neither at the hearing before Johnson, in his request for reconsideration by Johnson, nor in his appeal to the full board did he do so. Nothing indicates that the Board impeded any attempt of his to present his case to it.
 
 
 13
 Harris also claims that his five year sentence was contrary to Washington law. After Harris was originally sentenced, Washington enacted the Sentencing Reform Act (SRA), which changed the sentencing system "from an indeterminate system to a determinate system effective July 1, 1984." In re Whitesel, 763 P.2d 199, 201 (Wash.1988) (footnote omitted). Although the SRA does not apply to pre-Act sentences, a transition statute was enacted (Wash.Rev.Code § 9.95.009(2)) which requires "the Board to consider the purposes, standards and sentencing ranges set forth in the SRA and to attempt to make its decisions regarding pre-SRA offenders reasonably consistent with SRA ranges and standards." 763 P.2d at 201-02 (emphasis in original) (footnote omitted).
 
 
 14
 Harris contends that his sentence was illegal because it was in excess of the SRA range for his offense. However, under Washington law the Board may depart from the SRA standard range if it provides adequate written reasons. Whitesel, 763 P.2d at 202. Courts "will not interfere with a Board determination in this area unless the Board is first shown to have abused its discretion in setting a prisoner's discretionary minimum term." Id. at 203 (emphasis in original). An abuse of discretion occurs either when " 'it can be said no reasonable man would take the view adopted' " or when the Board fails to give adequate reasons for its departure. In re Myers, 714 P.2d 303, 307-08 (Wash.1986) (quoting State v. Hurst, 486 P.2d 1136, 1138 (Wash.App.1971)).
 
 
 15
 In its carefully detailed written sentencing decision, the Board discussed Harris's history, which demonstrated that he had not been rehabilitated and did not deal well with life on the outside.
 
 
 16
 "The Board ... has discretion to consider a pre-SRA offender's level of rehabilitation when it makes sentencing decisions outside the SRA standard range." In re Storseth, 751 P.2d 1217, 1220 (Wash.App.1988). The Storseth court went on to explain that commission of a subsequent offense evidences lack of rehabilitation, as do "probation violations indicating lack of respect for the court's authority, lack of meritorious effort at rehabilitation, or an inclination to commit crimes similar in nature to the pre-SRA offense." Id.
 
 
 17
 It is clear that the Board acted reasonably and gave adequate written reasons for its departure. The Washington Court of Appeals found no error in Harris's sentence, nor did the Washington Supreme Court. Nor do we.
 
 D. Attorney Fees
 
 18
 Harris requests that this court award him attorney fees. However, he is not eligible for fees under 18 U.S.C. § 3006A. That section provides for the award of fees to counsel who have previously been appointed by the court to represent a "financially eligible person." 18 U.S.C. § 3006A(a)-(d). Harris's counsel has not been appointed to represent him, either in this or the district court. Therefore he cannot take advantage of section 3006A.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3